UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
AMRIT PAL SINGH,                       )
                                       )
            Plaintiff,                 )
                                       )
     v.                                )    Civil Action No. 09-499 (RBW)
                                       )
JANET NAPOLITANO,                      )
Secretary of Homeland Security,        )
et al.,                                )
                                       )
            Defendants.                )
_____)

**MEMORANDUM OPINION**

Amrit Pal Singh, the plaintiff in this civil lawsuit, seeks, inter alia, "an order requiring [defendants Janet Napolitano, Sarah Taylor, and Eric Holder] to promptly adjudicate his [a]pplication for [a]djustment of [s]tatus to permanent residency and to issue a declaratory judgment declaring that [the United States Customs and Immigration Service]'s [alleged] failure to respond for almost nine years to a request for an approval of adjustment of status is an abuse of discretion."[1] Petition for Writ of Mandamus, Declaratory Judgment, and Injunctive Relief for Delaying the Decision on the Application for Adjustment of Status (the "Pl.'s Pet.") at 7. On July 24, 2009, the defendants filed a motion to dismiss the plaintiff's Petition for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or for summary judgment pursuant to Federal Rule of Civil Procedure 56. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss[] or[,] in the [Alternative], for

---

[1] The plaintiff is suing each of the defendants in their official capacities—Ms. Napolitano as Secretary of Homeland Security, Ms. Taylor as District Director for the United States Citizenship and Immigration Services, and Mr. Holder as Attorney General.

Summary Judgment (the "Defs.' Mem.") at 1. The Court held a hearing on the merits of the defendants' motion on March 22, 2010, and after carefully considering the parties' arguments at the hearing, the defendants' motion to dismiss or for summary judgment, and all relevant submissions and attachments thereto,[2] the Court concludes, as it did at the hearing, that it lacks subject-matter jurisdiction to entertain this case.

## I. Background[3]

The plaintiff is a citizen of India who currently resides in the United States pursuant to a grant of asylum issued on May 12, 1999. Defs.' Stmt. of Facts ¶1. Based on his asylum status, the plaintiff "filed an adjustment of status application (Form I-485) on August 14, 2000." Pl.'s Pet. ¶ 6. Presumably as part of adjudicating the plaintiff's adjustment of status application, the defendants reviewed the plaintiff's asylum application, in which they discovered that the plaintiff was a member of and provided material support to the Babbar Khalsa International, and provided material support to the Sikh Student Federation, Bittu Faction, Defs.' Stmt. of Facts ¶ 2, both considered to be Tier II and Tier III terrorist organizations, respectively, Defs' Mot. at 4-5. Pursuant to a March 26, 2008 memorandum issued by the United States Citizenship and Immigration Services' ("USCIS") deputy director (the "Policy Memorandum"), its current policy

---

[2] In addition to the plaintiff's Petition and the defendants' motion to dismiss and their memorandum of points and authorities in support thereof, the Court considered the following documents in rendering its decision: (1) the Plaintiff's Opposition to Defendant[]s['] Motion to Dismiss, or[,] in the Alternative, for Summary Judgment (the "Pl.'s Opp'n"); (2) Defendants' Statement of Undisputed Material Facts (the "Defs.' Stmt. of Facts"); and (3) the Defendants' Reply in Further Support of Their Motion to Dismiss, or[,] in the Alternative, for Summary Judgment.

[3] The plaintiff has failed to file a statement of material facts in compliance with Local Rule 7(h), and thus the Court will treat the defendants' asserted facts as undisputed. Local Civ. R. 7(h) (stating that "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such fact is controverted in the statement of genuine issues filed in opposition to the motion"); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 154 (D.C. Cir. 1996) (affirming decision in defendant's favor after plaintiff's statement failed to rebut the defendant's statement); Wiesner v. FBI, 577 F. Supp. 2d 450, 452 (D.D.C. 2008) (Walton, J.) ("The Court therefore treats the [defendant's] asserted facts as undisputed for purposes of its motion to dismiss or for summary judgment.").

regarding applications for adjustment of status for asylees who have provided material support to terrorist organizations is to withhold adjudication of cases that could potentially benefit from the Secretary's authority, after consultation with the Attorney General, to determine in her "sole unreviewable discretion" whether to grant a waiver of inadmissibility to a particular person, 8 U.S.C. § 1182(d)(3)(B)(i) (2006), who affords support to a Tier II and Tier III terrorist organization, 8 U.S.C. § 1182(a)(3)(B) (2006). Defs.' Stmt. of Facts ¶¶ 4-5. Thus, the defendants have not adjudicated the plaintiff's adjustment of status application due to this policy. Id. ¶ 5.

The plaintiff filed this action on March 16, 2009, arguing that "the [d]efendants have unlawfully withheld and unreasonably delayed action on [the p]laintiff's application," pursuant to 5 U.S.C. § 706 (2006). Pl.'s Pet. ¶ 24. The plaintiff seeks declaratory relief and a writ of mandamus. Pl.'s Pet. at 7. The defendants, for their part, argue that the plaintiff's petition should be dismissed on subject-matter jurisdiction grounds. Specifically, the defendants argue that as to Attorney General Holder, the case should be dismissed because the "[p]laintiff's [a]pplication is not being delayed due to any background checks or any activities of the FBI or DOJ, and thus, [the plaintiff] lacks standing to sue the FBI or DOJ because he is not suffering any injury by virtue of their activities." Defs.' Mot. at 7. As to the remaining defendants, they argue that the USCIS's decision to hold the plaintiff's adjustment of status application in abeyance is a discretionary decision that falls outside of this Court's jurisdiction under the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(2)(B).

## II. Standard of Review

In deciding a motion to dismiss based upon lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a Court is not limited to the allegations set forth in the

3

complaint, but "may consider materials outside of the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction[.]" Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C.Cir. 2005). Under Rule 12(b)(1), "[i]t is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction, see e.g. Hollingsworth v. Duff, 444 F. Supp. 2d 61, 63 (D.D.C. 2006) (Collyer, J.).

Furthermore, because the defendants are alleging that Section 1252(a)(2)(B)(ii) strips this Court of jurisdiction, they must "overcome the strong presumption in favor of judicial review of administrative action." INS v. St. Cyr, 533 U.S. 289, 298 (2001). Thus, only upon a "showing of clear and convincing evidence of a contrary legislative intent [should] the courts restrict access to judicial review." Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 44 (1991) (citation and internal quotation marks omitted). But, the Court also must be mindful of "the general rule that courts should refrain from interfering with matters of immigration and national security." Orlov v. Howard, 523 F. Supp. 2d 30, 36 (D.D.C. 2007) (Bates, J.); see also INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations" (internal quotation marks omitted)).

### III. Legal Analysis

As an initial matter, it does not appear from the face of the plaintiff's Petition that he has set forth sufficient allegations to establish Article III standing to bring suit against the Attorney General or the Department of Justice. "To demonstrate standing under Article III of the

Constitution, [the plaintiff] must show an injury in fact caused by the defendant and redressable by judicial relief." Stilwell v. Office of Thrift Supervision, 569 F.3d 514, 518 (D.C. Cir. 2009) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). A qualifying injury must be "concrete and particularized" and either "actual or imminent." City of Dania Beach, Fla. v. FAA, 485 F.3d 1181, 1185 (D.C. Cir. 2007) (citing Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996)). Here, the plaintiff alleges that the FBI had the responsibility for completing a background name check on the plaintiff, that "[t]he background check unduly delayed the processing of [the p]laintiff's adjustment application," and that "thousands of applicants are facing name check[] delays by the FBI and other agencies for no reason whatsoever." Pl.'s Pet. ¶ 20. However, the plaintiff does not allege any harm flowing from this delay; indeed, his position is that regardless of the delay, he is entitled to have his adjustment of status application granted under current USCIS policy. See id. ¶¶ 19-20 (claiming that the USCIS's policy is to grant adjustment of status applications "even when the FBI name check request has been pending for more than 180 days"). So, even assuming that there has been a delay in completing the FBI name check, the plaintiff has not alleged an injury-in-fact necessary for Article III standing to raise a claim against the Attorney General.[4] The Court will, therefore, dismiss the plaintiff's claims against the Attorney General.

As to the remaining defendants, the overarching issue before the Court is whether subject-matter jurisdiction exists to adjudicate the plaintiff's Petition to compel the USCIS to

---

[4] Even assuming that the plaintiff has standing to bring an action against the Attorney General, summary judgment nonetheless would have to be issued for the Attorney General. The defendants assert in their Statement of Undisputed Facts that "[t]he FBI provided the results of a name check regarding [the p]laintiff's [a]pplication to USCIS on September 10, 2003." Defs.' Stmt. of Facts ¶ 5. As noted above in footnote 1, the plaintiff has not disputed this assertion. Thus, the Court may treat the defendants' assertion as true and conclude that the plaintiff's claim against the Attorney General is moot because the name check has now been completed. Therefore, the Attorney General would be entitled to summary judgment notwithstanding the justiciability defect of the plaintiff's Petition.

rule on his Form I-485 application. The jurisdiction-stripping statute at issue in this case, 8 U.S.C. § 1252(a)(2)(B)(ii), states the following:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

Considered in the context of its individual components, the defendants can establish the applicability of Section 1252(a)(2)(B)(ii) by demonstrating that (1) the holding of the plaintiff's application in abeyance is within the discretion of the Secretary of Homeland Security; (2) the discretion exercised by the Secretary is one that is "specified under this subchapter"; and (3) the specified discretion is an "action" as that term is used in the statute. Two members of this Court have reached different conclusions as to whether a decision to hold an application in abeyance meets all three elements. Compare Orlov, 523 F. Supp. 2d at 37 (holding that the pace of processing an adjustment of status application is a discretionary decision which the INA removes from this Court's jurisdiction) with Liu v. Novak, 509 F. Supp. 2d 1, 6-7 (D.D.C. 2007) (Sullivan, J.) (finding that § 1252(a)(2)(B)(ii) did not bar plaintiff's claim because agency inaction does not satisfy the action requirement and pace of processing does not fall under the Attorney General's discretion, and, furthermore, that the Secretary's discretion is not one that is "specified under this subchapter").[5] Upon evaluating the Orlov and Liu decisions, this member of the Court believes that Judge Bates's approach in Orlov is the correct approach and concludes that the government's decision to hold the plaintiff's application in abeyance falls within the purview of discretionary decisions or actions that fall outside this Court's jurisdiction.

---

[5] The District of Columbia Circuit has not issued a decision addressing this issue. Orlov, 523 F. Supp. 2d at 34.

In assessing the first component of Section 1252(a)(2)(B)(ii), the Court's analysis starts with 8 U.S.C. § 1182(d)(3)(B)(i), which states that with few exceptions, "the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's <u>sole unreviewable discretion</u> that subsection (a)(3)(B) of this section shall not apply with respect to an alien within the scope of that subsection" (emphasis added). The Secretary also has discretion to promulgate regulations that she feels are necessary to exercise her authority to grant permanent resident status to an asylee. See 8 U.S.C. § 1159(b) (providing that the Secretary of Homeland Security, "in the Secretary's . . . discretion and <u>under such regulations as the Secretary . . . may prescribe</u>, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum"). As Judge Bates observed in regards to an analogous statute, "[t]he plain meaning of this statute . . . is to grant [the Secretary] the power and the discretion to promulgate regulations governing <u>how (and when)</u> adjustment decisions are made, but not to prescribe any time limitation whatsoever." <u>Orlov</u>, 523 F. Supp. 2d at 34 (analyzing 8 U.S.C. § 1255(a), which provides that "[t]he status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence" status under certain circumstances) (emphasis added). And even putting aside the congressional grant of discretion provided by Section 1159(b) to determine how and when adjustment decisions are made, it is well-settled that, as a general matter, the Secretary also has the discretion to "fashion [her] own rules of procedure and to pursue methods of inquiry capable of permitting [her] to discharge [her] multitudinous duties."[6] <u>Vermont Yankee Nuclear Power</u>

---

[6] The plaintiff asserted during the March 22, 2010 hearing that the USCIS must first rule on his adjustment of status application <u>before</u> the Secretary can assess whether a waiver of inadmissibility is appropriate, and that because the agency's review of the plaintiff's application involves "nondiscretionary, or purely legal, decisions regarding an
(continued . . .)

7

Corp. v. Natural Resources Defense Council, 435 U.S. 519, 543 (1978); cf. Federal Power Commission v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 333 (1976) (reversing circuit court's order requiring an investigation to be conducted within 30 days, on the grounds that "[a]t least in the absence of substantial justification for doing otherwise, a reviewing court may not . . . proceed by dictating to the agency the methods, procedures, and time dimension of the needed inquiry"). And pursuant to this clearly-established statutory and case authority, the Secretary presumably opted to rely on her general discretion to fashion procedural rules under Vermont Yankee in issuing the Policy Memorandum to assist the agency in "considering several groups and categories of cases as possible candidates for additional terrorist-related inadmissibility provision exemptions." Defs.' Mem., Ex. 2 (March 26, 2008 Policy Memorandum), at 2. Thus, under the statutory scheme and the relevant case law, the Court has no doubt that the Secretary has the discretion to hold the plaintiff's application in abeyance.

The next step in the Court's analysis is to determine whether the Secretary's discretion is "specified" under the same title, chapter, and subchapter of the United States Code as Section 1252(a)(2)(B)(ii). As Judge Sullivan noted in Liu, "Section 1252(a)(2)(B)(ii) does not apply to all discretionary decisions," but only to the "narrow[] category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the [Secretary's] discretion." Liu, 509 F. Supp. 2d at 7 (citations omitted). Here, Section 1252(a)(2)(B)(ii) is

---

(. . . continued)
alien's eligibility for . . . relief," Sepulveda v. Gonzales, 407 F.3d 59, 62-63 (2d Cir. 2005), Section 1252(a)(2)(B)(ii) does not bar this Court from ordering the agency to reach a decision in regards to the plaintiff's application. See also Pl.'s Opp'n at 3 (citing numerous circuit court cases for the proposition that Section 1252(a)(2)(B)(ii) does not strip federal courts of jurisdiction to review nondiscretionary decisions regarding an alien's eligibility). This argument is without merit. The Court has found no authority, and the plaintiff cites none, that supports the proposition that the agency is procedurally compelled to issue a ruling on the adjustment of status application before determining whether a waiver is appropriate. If anything, the regulation applicable to asylees seeking adjustments to permanent resident status suggests that the USCIS may contemporaneously consider both the applicant's eligibility for adjustment of status and the propriety of a waiver in determining whether to grant the adjustment of status application. Cf. 8 C.F.R. § 209.2 ("An application for [a] waiver may be filed . . . with the application for adjustment.").

located under Title 8, Chapter 12, Subchapter II of the United States Code. Within Subchapter II are Sections 1151 to 1381 of Title 8. As noted above, the provision that confers discretion on the Secretary of Homeland Security to determine whether (and how) to issue a waiver of inadmissibility is found in Section 1159(b), which, of course, falls under Subchapter II.[7] Orlov, 523 F. Supp. 2d at 34 (emphasis added). Thus, the Court is satisfied that the second element of the analysis—that the discretion be "specified under [the same] subchapter" as Section 1252(a)(2)(B)(ii)—is also satisfied.[8]

The last step in the analysis is whether the exercise of this specified discretion constitutes an "action" under Section 1252(a)(2)(B)(ii). While this member of this Court agrees with Judge Sullivan that "the established body of administrative law . . . distinguishes between" action and inaction, Liu, 509 F. Supp. 2d at 7, whether the Secretary's decision to hold the plaintiff's adjustment of status application in abeyance constitutes "inaction" that is reviewable by the Court is a closer question. At first blush, the plaintiff's argument that the Secretary's decision to hold his application in abeyance is "inaction" certainly has some appeal, as the plaintiff's application is currently in a state of limbo and has been in this status for several years. Furthermore, there is a real possibility that without judicial (or other) intervention, the plaintiff's application could remain pending indefinitely. On the other hand, Judge Bates's observation in

---

[7] The fact that the Secretary did not rely on Section 1159(b) in issuing its Policy Memorandum does not impact the analysis of whether the Secretary's determination to hold the plaintiff's application in abeyance is reviewable. The only germane inquiry here is whether Congress specifically provided discretion under Subchapter II to allow the Secretary to determine when adjustment applications are to be adjudicated by the agency, and not whether the Secretary actually exercised that authority. In other words, the Secretary's decision to rely on another source of authority for promulgating procedural rules does not change the fact that Congress has provided similar discretion under Section 1159(b).

[8] In Liu, Judge Sullivan concluded that "[t]he subchapter . . . does not address, much less specify any discretion associated with, the pace of application processing." Liu, 509 F. Supp. 2d at 7. However, Judge Sullivan makes no mention of Congress's grant of authority under 8 U.S.C. § 1159(b) and 8 U.S.C. 1255(a) to the Secretary of Homeland Security and the Attorney General, respectively, to promulgate regulations in furtherance of their discretion to adjust the status of alien applicants seeking permanent resident status.

Orlov that the word "action" as used in Section 1252(a)(2)(B)(ii) connotes "a series of acts" also has persuasive force. Orlov, 523 F. Supp. 2d at 35. For instance, one could argue here that the Secretary's decision to hold the plaintiff's application in abeyance is a result of a series of affirmative acts: the Secretary's decision to promulgate regulations setting forth the procedures for removing an adjustment of status application from the general pool to a special pool for consideration by the Secretary, the Secretary's removal (via the District Director) of the plaintiff's application from the general pool to the select pool, and the act of conducting an investigation into whether a waiver of admissibility would be appropriate in the plaintiff's case. Thus, it is difficult to peg this case squarely within either the "action" or "inaction" categories, which is hardly surprising, given that the difficulty in distinguishing between what constitutes "action" and "inaction" has been long acknowledged by courts and academic commentators alike. See, e.g., DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 212 (1989) (Blackmun, J., dissenting) (asserting that "a sharp and rigid line between action and inaction" amounts to "formalistic reasoning [that] has no place in the interpretation of the broad and stirring [c]lauses of the Fourteenth Amendment"); Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982) (refusing to "pretend that the line between action and inaction . . . is clearer than it is"); Matthew D. Adler and Seth F. Kreimer, The New Etiquette of Federalism: New York, Printz, and Yeskey, 1998 S. Ct. Rev. 71, 92 (1998) ("What[] precisely[] makes some person's (or some official's) behavior an 'action,' as opposed to a mere failure to act, has been and remains a topic of considerable controversy in the philosophical literature."); Thomas A. Eaton and Michael Lewis Wells, Governmental Inaction as a Constitutional Tort: DeShaney and its Aftermath, 66 Wa. L. Rev. 107, 109 n.9 (1991) (noting that "the distinction between acts and omissions often turns on how one poses the question").

Although the difficulty in defining the term "action" under Section 1252(a)(2)(B)(ii) would seem to imply that judicial review of the plaintiff's claim is required, see MCorp, 502 U.S. at 44, a closer examination reveals that as a practical matter, the Court has no choice but to conclude that the Secretary's decision to hold the plaintiff's application in abeyance constitutes "action," rather than "inaction." This is because a review of the Secretary's decision to hold the plaintiff's application in abeyance necessarily entails an indirect review of the Secretary's discretionary authority. For example, the Court would have to assess whether the Secretary's delay in processing the plaintiff's application is unreasonable. See Telecommunications Research & Action Center v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) (recognizing six factors relevant to the determination whether agency delay is unreasonable). And, the Court's assessment of reasonableness would surely require a review of what Congress designed to be a "careful, time-consuming process given the research needed by law enforcement and intelligence agencies and the various levels of scrutiny needed within the three Cabinet departments and between the three Cabinet heads" to determine whether the nature of the agency's investigation justifies the delay in processing the plaintiff's application. Defs.' Mem. at 15. But these decisions as to whether and how to conduct an investigation into the plaintiff's background, as discussed above, are undoubtedly within the discretionary authority of the Secretary that cannot be reviewed by this Court; thus a review of the Secretary's decision to hold the plaintiff's application in abeyance is not merely a review of "inaction," but rather a review of a series of discretionary acts that is plainly barred by Section 1252(a)(2)(B)(ii). The Court, therefore, finds that the third element under Section 1252(a)(2)(B)(ii) is also satisfied.

## IV. Conclusion

Based on the foregoing analysis, the defendants' motion to dismiss for lack of subject-matter jurisdiction must be granted by the Court. With regards to the Attorney General, the plaintiff failed to allege any injury-in-fact that would give rise to standing under Article III. As for the remaining defendants, there is little doubt that the Court is precluded under Section 1252(a)(2)(B)(ii) from reviewing the Secretary's decision to hold the plaintiff's application in abeyance. Therefore, despite the "general presumption in favor of judicial review of administrative acts," Liu, 509 F. Supp. 2d at 7, the Court concludes that it must dismiss the plaintiff's Petition.

**SO ORDERED** this 11th day of May, 2010.[9]

REGGIE B. WALTON
United States District Judge

---

[9] An order was issued on March 23, 2010 granting the defendants' motion to dismiss and denying as moot its motion for summary judgment. An amended and final order will accompany the issuance of this memorandum opinion (1) vacating the March 23, 2010 Order, (2) granting the defendants' motion to dismiss, (3) denying as moot the defendants' motion for summary judgment, and (4) closing this case.